UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-29-GWU


TIMOTHY WISE,                                                                        PLAINTIFF,


VS.                            **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional
impairment is significant, the Commissioner may still use the rules as a framework
for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);
however, merely using the term "framework" in the text of the decision is insufficient,
if a fair reading of the record reveals that the agency relied entirely on the grid.  Id.
In such cases, the agency may be required to consult a vocational specialist.
Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial
evidence to support the Commissioner's decision may be produced through reliance
on this expert testimony only if the hypothetical question given to the expert
accurately portrays the plaintiff's physical and mental impairments.  Varley v.
Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Timothy Wise, was found by an Administrative Law Judge (ALJ)
to have "severe" impairments consisting of a history of substance abuse mood
disorder, a pain disorder, an anti-social personality disorder, undetermined poly-
substance dependence, and degenerative disc disease of the thoracic spine with
chronic pain.  (Tr. 10).  Nevertheless, based in part on the testimony of a Vocational
Expert (VE), the ALJ determined that Mr. Wise retained the residual functional
capacity to perform a significant number of jobs existing in the economy, and

therefore was not entitled to benefits.  (Tr. 12-18).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 48, seventh grade education, and work experience as a welding helper and mechanic could perform any jobs if he were capable of lifting 60 pounds occasionally and 25 to 30 pounds frequently, and also had the following non-exertional restrictions.  He: (1) could no more than frequently climb, stoop, crouch, kneel, or crawl; (2) should avoid concentrated exposure to full body vibration; and (3) retained the mental capacity to understand, remember, and carry out simple work instructions in a low stress, object-focused work environment in which contact with coworkers and supervisors was infrequent and casual in a non-public work setting in which changes in routine were infrequent and gradual.  (Tr. 52-53).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 53).[1]

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

---

[1]Part of the ALJ's question and the VE's answer is recorded in the transcript as "inaudible," but the plaintiff has not raised any issue in this regard.

The plaintiff alleged disability beginning March 31, 2006 due to back problems, "cancer" on his leg, osteoarthritis, diabetes, post traumatic stress disorder and bipolar disorder. (Tr. 130). He testified that his back problems were so severe that standing for even 15 to 30 minutes or tying his shoelace would cause him to take to his bed for two or three days. (Tr. 37-38). He felt he could pick up 10 to 20 pounds and sit for 45 to 60 minutes. (Tr. 39). He admitted having a history of problems with drugs and alcohol, and had been through an inpatient detoxification program several times and at one point had ended up in prison. (Tr. 34, 45). He was able to control his diabetic condition with diet and had thought that a lesion on his leg had been referred to as skin cancer but added that there had not been a biopsy and "I really don't see how they could say that." (Tr. 49-51).[2] From a psychological perspective, he had sought treatment from the Kentucky River Community Care (KRCC) outpatient mental health clinic and was taking the anti-depressant medication Celexa but admitted missing many appointments because of lack of transportation. (Tr. 33, 36, 40). He asserted that he had not been drinking or using drugs for "about" a year prior to the August 4, 2009 hearing and did not attend any programs such as Alcoholics Anonymous because he had been able to quit on his own. (Tr. 34).

---

[2]The ALJ found both of these conditions non-severe. (Tr. 10).

The ALJ's functional capacity assessment is supported by a consultative examiner, Dr. Daniel Sean Stewart, which was conducted in January, 2008. (Tr. 590). Despite the plaintiff's complaints of five fractured vertebrae which had decreased his range of motion and even hindered his ability to walk and move about, Dr. Stewart found that Mr. Wise was in no distress, could get on and off the examination table with ease, had a normal gait and station, and no limitations on his range of motion at any level. (Tr. 592). His neurological examination was grossly non-focal. He reviewed office notes from "Dr. Ann Wasson" which discussed predominantly "symptomatic treatment and provided little insight into disability." (Id.). This is presumably a reference to notes from several sources, including Dr. Roy Varghese, at the Ann Wasson Clinic in Hyden, Kentucky, that reflect complaints of pain but also contain references to an unremarkable physical examination and to the plaintiff "doing fine," although he was receiving the narcotic pain medication Lorcet. (Tr. 568-74). The Lorcet was discontinued in October, 2007, because a drug screen was positive for another narcotic, Percocet, which he was not supposed to take. (Tr. 566). In any case, Dr. Stewart diagnosed chronic low back pain without evidence of organic pathology or limitation, being status post a gunshot wound 20 years earlier to the right shoulder and chest with no limitations, diabetes, a large nevus on the left thigh which was "likely benign and certainly not limiting from an employment perspective," persistent tobacco abuse, and an unclear

psychiatric disorder. (Tr. 592-93). He concluded that Mr. Wise appeared to have no physical limitations.

A state agency physician, Dr. Robert K. Brown, reviewed the evidence as of February 27, 2008 and concluded that the plaintiff did not have a "severe" impairment. This also supports the administrative decision.

The plaintiff also submitted examinations from September and October, 2000 which were apparently conducted in connection with a Worker's Compensation claim at the time. One of the examinations was by Dr. Christa U. Muckenhausen, who found tenderness of the cervical, thoracic, and lumbar spine areas with muscle spasms and trigger points, a limited range of motion of the neck and spine, and difficulty with gait. (Tr. 654, 659-60). She recommended further testing, but concluded that the plaintiff could perform light level exertion with limited pushing and pulling, and would be limited to less than full-time standing, sitting, and walking. (Tr. 652).

The plaintiff argues that Dr. Muckenhausen's examination was improperly rejected by the ALJ. However, leaving aside the issue of what direct relevance it might have on his condition when he filed his application for benefits almost six years later, Dr. Muckenhausen was only a one-time examiner and her opinion is not only offset by the opinion of Dr. Stewart, but that of Dr. Daniel Primm who conducted the other Worker's Compensation examination in 2000. As with the

other sources, Dr. Primm reviewed x-rays showing old compression fractures in the spine with moderate degenerative changes.  His examination showed tenderness and some limitation of motion, but normal reflexes, motor strength, sensation, and straight leg raising.  (Tr. 666-67).  He felt that there was no reason that Mr. Wise could not return to work lifting 60 pounds occasionally and 25 to 30 pounds frequently.  (Tr. 666).  These restrictions were adopted by the ALJ.  (Tr. 16).

The ALJ gave the plaintiff the benefit of the doubt in applying even Dr. Primm's physical limitations, since he could have relied on Dr. Stewart's opinion that there were no limitations at all.  Dr. Muckenhausen's report was not entitled to greater weight than the other one-time examiners, and the plaintiff's suggestion to the contrary is without merit.

The plaintiff's other argument is that the ALJ did not properly deal with his allegations of subjective pain.  He does not specify what allegations the ALJ improperly rejected.  The ALJ did find that Mr. Wise's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.  See Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).  He discounted the complaints of disabling pain due to the mild findings on spine x-rays, the lack of limitations in Dr. Stewart's physical examination and the plaintiff's ability to perform some activities

10

such as housecleaning, dishwashing, laundry, lawn mowing, shopping, and occasionally going out to eat, which he felt were inconsistent with severe debilitating pain.  (Tr. 15-16).  He also cited the fact that the plaintiff denied any history of alcohol or drug abuse to Dr. Stewart and the statement by a consultative psychological examiner, Melissa Crouch, that he was not completely forthcoming about substance abuse.  (Tr. 16, 538, 591).  Under the circumstances, the court finds a reasonable basis for the ALJ's credibility finding.

The plaintiff does not raise any issue with regard to the psychological restrictions in the hypothetical question, but the court notes in passing that they are supported by the aforementioned report of Melissa Crouch, Ph.D.  (Tr. 535-38).  The discharge summary from the Appalachian Regional Health Care Psychiatric Center dated August 1, 2006, indicates that the plaintiff had been admitted for poly-substance dependence and a substance-induced mood disorder, which would not be a basis for benefits under Public Law 104-121, 110 Stat. 847.  (Tr. 264-66).

Finally, recent outpatient treatment notes from KRCC reflect complaints of depression, and a registered nurse practitioner prepared a mental source statement indicating limitations in most areas along with no useful ability to maintain attention and concentration for extended periods, keep to a schedule, or travel in unfamiliar places or use public transportation.  (Tr. 691-3).  However, as the ALJ noted, a nurse practitioner is not an acceptable medical source.  20 C.F.R. § 416.1513.  He

also felt that her opinion was not consistent with the rest of the medical evidence. The court notes that the nurse practitioner appeared not to be aware of the plaintiff's substance abuse problems and that she qualified her report by noting that he was not consistent with keeping his appointments. (Tr. 693). Therefore, the mental factors of the hypothetical question are also supported by substantial evidence.

The decision will be affirmed.

This the 13th day of December, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**